ELLEN E. STAFFORD v. JOHN T. STAFFORD.

1. VERDICT—JUDGMENT.—On the trial of a suit for divorce brought by the wife, the jury found by their verdict that certain deeds executed by the husband, and which, on their face, conveyed the fee to the wife, were "made for the purpose of preventing said property from being taken for the liquidation of defendant's debts," and in the same verdict found the property so conveyed "was separate property:" *Held*, error to decree the property upon such a verdict to the husband.

2. CONVEYANCE FROM HUSBAND TO WIFE.—A deed to real estate made by the husband to his wife, "for natural love and affection," vests the title as between the parties in the wife, and she can hold it against the husband and his heirs.

3. DIVORCE—EVIDENCE.—In a suit for divorce, neither party can be a competent witness, under article 3452, Pasc. Dig., in regard to matters affecting the right to divorce; nor is this rule affected by the act of May 19, 1871, which allows parties in civil actions to testify.

4. VERDICT—In suits for divorce, the question of marriage between the parties should be submitted to the jury, and found by them in their verdict, before a decree divorcing the parties can be entered.

ERROR from Victoria. Tried below before the Hon. T. C. Barden.

Mrs. Ellen E. Stafford, brought suit against her husband, John L. Stafford, for divorce, on the ground of cruel treatment. The instances of cruelty charged were numerous, and the verdict of the jury found most of the allegations of cruelty to be true. On the trial, Mrs. Stafford testified as a witness in regard to the acts of cruelty alleged. The action of the court overruling the objection to her testimony, based on her not being a competent witness under the statute, was assigned for error. Deeds were executed by Stafford to his wife embracing all property designated in the verdict as "separate property." These deeds were absolute on their face conveying the fee, and mentioned the consideration of "natural love and affection and one dollar paid." The defendant, in his answer, alleged that these deeds were made upon certain trusts, to wit: that the defendant should enjoy the rents and profits during his life, and that, if the marital relation was determined by the death of the defendant, the plaintiff should have the property; but if it was determined by the death of the plaintiff or by divorce, the defendant should have it. Stafford thereupon prayed the court to cancel these deeds in case a divorce should be granted. Mrs. Stafford's counsel excepted to this part of the answer, but the exception was overruled.

The verdict of the jury, after specially mentioning the acts of cruel treatment which they found established by the evidence, continued as follows: "We further find that all the deeds executed by the defendant of property men-

tioned in defendant's answer was for the purpose of preventing said property from being taken for the liquidation of defendant's debts.   We, the jury, further find that all the property mentioned in defendant's answer was *separate property*, except lot No. 1, block No. 1, range No. 1, containing four and a half acres of land, and lots Nos. 2, 3, and 4, block 15, range 1, rents and revenues derived from rent of Wheeler's store, and horse, stock, and cattle, including work oxen, now in possession of defendant, which is community property."

Though the evidence of both parties established the marriage between them, the fact of the marriage was not found by the jury.

The court decreed a separation from the bonds of marriage, and gave to Mrs. Stafford the real estate designated in the verdict as community property, while to the husband was decreed certain land embraced in the deeds above referred to from him to his wife.

The court overruled a motion to reform that portion of the decree which attempted to divest Mrs. Stafford of the title which she had derived from her husband, and she excepted, and assigned as error this action of the court.

The defendant also assigned errors, as follows:

1. The court erred in admitting the testimony of plaintiff herself to go to the jury in regard to matters affecting the question of divorce.

2. The court erred in decreeing a divorce, because the verdict of the jury was not sufficient to authorize such a decree.

*Glass & Callender*, for plaintiff in error.

*Phillips, Lackey & Stayton*, for defendant in error.

DEVINE, ASSOCIATE JUSTICE. — The plaintiff in error brought a suit in the District Court of Victoria county to

obtain a divorce from defendant in error, on the alleged ground of cruel treatment. A verdict was rendered, and judgment entered decreeing a divorce in her favor, and alloting to her certain property in Victoria county, from which judgment she has sued out a writ of error to this court. The defendant, John F. Stafford, has likewise assigned errors.

It is not necessary, so far as plaintiff's rights are concerned, to notice her exceptions taken or assignment of errors, as it is admitted that her whole cause of complaint is embraced in the following statement contained in her counsel's brief: "The plaintiff filed a motion to correct and reform the decree, so as to assign to her the real estate to which she held the title. This motion was overruled. Plaintiff excepted, and now brings the decree to this court to be revised and corrected *in regard to this property question alone;*" and this is substantially set forth in plaintiff's assignments of error, numbered 3 and 4.

The court, in the charge to the jury, directed them to inquire and state whether the deed conveying certain property to plaintiff by her husband, the defendant, was intended as an absolute gift or donation, and if not, for what purpose was it executed?

The jury, after finding the alleged cruelties on the part of the husband, as regarded intoxication and other matters, replied to the charge respecting the execution of the deeds, that "all the deeds executed by the defendant of property mentioned in defendant's answer, were for the purpose of preventing said property from being taken for the liquidation of defendant's debts." The jury further found that the real estate embraced in the deeds from defendant to plaintiff "was separate property." The court, however, decreed to defendant the property found by the jury to be separate property, although the execution, acknowledgment, delivery, and registration of the deeds conveying this property in consideration of love and af-

fection and one dollar received, was in evidence before the court. The finding of the jury, with this evidence before it, could only have meant that it was the separate property of plaintiff, and as such it was error in the court to adjudge it to defendant. The finding of the jury, that this property was conveyed to plaintiff for the purpose of preventing creditors from seizing it, places defendant in no better position than when the deeds were executed and delivered to his wife.

It is contended by counsel for defendant in error that this property, being acquired during the coverture, became by reason thereof community property. We do not so consider it in the present case. It was a gift or donation to the wife, and as such is excepted out of that clause of the statute which declares all property acquired by either husband or wife during the marriage community property. It is competent for a husband to make a gift or conveyance to his wife, and the wife can take and hold it against the husband or his heirs. The error of the court, in holding that this was either community property, or that the husband by his deeds had not parted with his interest in it, and decreeing of the same to the defendant, is alone sufficient to require a reversal of the judgment. The defendant, however, has assigned errors which will be noticed in the order presented, so far as they may be considered necessary. The first assignment is: "The court erred in admitting the testimony of the plaintiff herself to go to the jury in regard to matters affecting the divorce." To determine the question included in this assignment of error, it is necessary to refer to the law of 19th of May, 1871, (Pas. Dig., art. 6826,) and compare its provisions with the act of June 6, 1841, (Pas. Dig., art. 3452.) The section of this latter act is as follows: "In all suits and proceedings for divorce from the bonds of matrimony, the defendant shall not be compelled to answer upon oath, nor the petition be taken for confessed for want of an

answer; but the decree of the court shall be rendered upon full and satisfactory evidence, independent of the admissions or confessions of either party." Here we find an absolute prohibition and a negation of any implied proof or confession of the cause of action, by the failure of defendant to answer, wholly unknown to any other proceeding in our courts. In all civil suits a party to the suit may be called on to answer, under oath, interrogatories propounded, and a failure or refusal so to answer will operate to his loss or damage in the suit pending. In all other suits, save divorce, the confessions or admissions of a party may furnish the evidence on which a verdict and judgment are rendered that may deprive him of property, liberty, character, or life; while in a suit for divorce, under this law, no verdict will stand and no judgment can be rendered but "upon full and satisfactory evidence, independent of the confessions or admissions of either party."

The law of 19th May, 1871, reads: "That in the courts of this State there shall be no exclusion of any witness on account of color, nor in civil actions because he is a party to or interested in the issue tried."

This, we are of opinion, cannot be construed as repealing the law prohibiting parties from giving evidence in suits for divorce.

It is, however, contended by plaintiff in error that the prohibition in art. 3452 does not relate to parties to the suit giving evidence in the cause on their own behalf; that it was only intended to guard against collusive proceedings, and prevent the admission of the statements or confessions of either party, and as a protection to a defendant against his being compelled to answer under oath, and that that law grew out of divorce being a proceeding "*sui generis.*" The reason is no stronger against receiving the confessions or admissions of a party in the suit than exists, and always will exist, against permitting husband

and wife to come into court and testify against each other. The law changing the common-law rule of evidence in permitting parties in interest to testify in a suit *does not and was not intended* to still further alter the common law, and permit the husband or wife to testify against each other in the matters of divorce. With the question of community property it may be otherwise. The marriage contract or relation, while classed in its legal acceptation as a civil contract between the parties to it, " yet it is said to be more than a contract, and to differ from all other contracts," and has interests and legal consequences connected with and resulting from it that make it the most important to society of all human transactions. Its importance is fully appreciated by all civilized nations. It is perhaps the only civil contract, however, which the parties to it cannot at pleasure annul, and cannot in any instance annul save through the medium of the courts, and upon full and satisfactory proof, independent of the confessions or admissions of either party. The statute regulating divorce has remained during the thirty-three years from its enactment to the present time without any alteration or amendment. It has been during that time administered according to its terms without complaint as to any of its provisions, and no desire has existed or effort been made to alter it in any material features. Can it be supposed, under all the circumstances connected with or consequences flowing from a permission to the parties in interest to testify in divorce suits, that the Legislature, in the act of May, 1871, intended to repeal the prohibitions of the law of 1841, (art. 3452)? To do so would be to admit that the Legislature intended to remove all legal restraint against divorce, and enable the parties seeking or desiring a divorce to do indirectly what the law was designed to prevent. Great stress has been laid on the fact that the law of 1871 permits parties in interest to testify in civil suits, and that a suit for divorce is " a civil suit." The statement is plausible, but

not sound, and it fails to meet or embrace the whole question. While the suit for a divorce is in its form a civil proceeding, it has widely different features and incidents connected with it. In all divorce suits the defendant is charged with a breach of a solemn contract; in many cases with disgraceful and brutal conduct; in others with offenses that are known to the law either as a misdemeanor or felony. Again, no judgment of divorce can be rendered by agreement or consent; none by confession or admission of either party; neither can a judgment be rendered by default, and, as in criminal cases, the defendant cannot be compelled to criminate himself by answering or testifying under oath. These facts show that it is in its nature a *quasi* criminal proceeding, although not presented in the name of the State, nor punished by fine or imprisonment. To allow the husband and wife to give evidence in their divorce suit would not only loosen, weaken, and most injuriously affect the marriage tie, but would greatly tend to destroy or impair that unreserved confidence which exists between husband and wife, and which the wisdom of centuries has sought to preserve by preventing them from testifying, against each other, (save a limited exception.) It cannot be assumed that the Legislature, in giving parties in interest a right to testify, intended at the same time to alter the rule of evidence which prohibits the husband and wife from testifying against each other, and in effect repeal one of the most important sections of the act regulating divorce. "A construction which repeals former statutes or laws by implication, and divests long-approved remedies, is not to be favored in any case." (3 Hill, 472.)

The court erred in admitting the plaintiff to testify against the defendant, her husband, and should have granted defendant's motion for a new trial.

The failure of the court to present the question of marriage in its special issues to the jury, and the failure to find in their verdict the fact of a marriage, as also the questions

of alimony and the disposition made by the court of the community property, need not be further noticed than to observe that on a second trial these questions are not likely to be again presented. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.