Texas & Gulf Railway Company v. W. R. Hall and Wife.

Decided January 20, 1910.

**1.—Carriers of Passengers—Negligence—Starting While Passenger is Getting Off.**

Evidence considered and held to support a recovery by a passenger for injuries by starting train in motion while she was getting off the coach at her destination.

**2.—Damage—Injury to Person.**

Evidence considered and held to support a recovery of damages in sum of $5,000 for personal injuries received by a woman in getting off cars.

**3.—Getting Off Moving Train—Charge.**

A charge on the issue of plaintiff's contributory negligence in getting off a train while in motion, held to present no affirmative error, and not to be subject to the construction that it required a finding for plaintiff in the absence of negligence by plaintiff, and its omissions, if any, being cured by instructions given on request.

**4.—Injury to Wife—Husband's Contributory Negligence.**

Evidence considered and held not to require a charge on the issue of the husband's contributory negligence in failing to assist his wife off the train, in an action for injuries to her in alighting.

Appeal from the District Court of Panola County. Tried below before Hon. W. C. Buford.

*H. N. Nelson* and *Young & Stinchcomb*, for appellant.—The uncontradicted testimony shows that Mrs. Lilly Hall alighted from the train while it was moving, and that an ordinarily prudent person would not have done so under the same circumstances, therefore the peremptory instruction to return a verdict for the defendant should have been given. Dallas Con. St. Ry. Co. v. Lasch, 99 S. W., 729; International & G. N. R. Co. v. Rhoades, 21 Texas Civ. App., 459; Missouri, K. & T. Ry. Co. v. McElree, 16 Texas Civ. App., 182; Texas & Ft. S. Ry. Co. v. Atchison, 54 S. W., 1075; High v. International & G. N. R. Co., 55 S. W., 526; Ghio v. Metropolitan St. Ry. Co., 103 S. W., 142.

The recovery was excessive under the proof. Texas & N. O. Ry. Co. v. Syfan, 43 S. W., 551; Central Texas & N. W. Ry. Co. v. Gibson, 35 Texas Civ. App., 66; Taylor v. Grand Ave. Ry. Co., 84 S. W., 873; Stolze v. St. Louis Transit Co., 87 S. W., 517; Heinmiller v. Winston Bros., 107 N. W., 1102; Fry v. Great Northern Ry. Co., 103 N. W., 733; City of Jackson v. Carver, 35 So., 157; Baldwin v. Thompson, 57 Atl., 331; Porter v. Delaware, L. & W. Ry. Co., 134 Fed., 155; Lammers v. Great Northern Ry. Co., 84 N. W., 728; Hanley v. North Jersey Ry. Co., 47 Atl., 445; Chicago City Ry. Co. v. McCaughna, 74 N. E., 819; Lake St. Elev. Ry. v. Johnson, 70 Ill. App., 413.

If an ordinarily prudent person, situated as Mrs. Lilly Hall was, would not, under the same circumstances, have left the train while it was in motion or attempted to do so, the plaintiffs could not recover, and it was error to so instruct the jury that they must find, in addition thereto, that she would not have been injured if she had not left the train while it was moving, or attempted to do so. St. Louis S. W. Ry. Co. v. Rose, 93 S. W., 1105; Dallas Const. St. Ry. Co. v. Lasch, 99 S. W., 729; Northern Texas Trac. Co. v. Moberly, 109 S. W., 483.

The charge on the measure of damages instructed the jury that they might give plaintiffs compensation for the nature, character and extent of Lilly Hall's injuries, her physical pain, and her diminished capacity to labor, and in so doing the court authorized the jury to award the plaintiffs double damages. Texas & N. O. Ry. Co. v. McCraw, 43 Texas Civ. App., 247; International & G. N. R. Co. v. Butcher, 98 Texas, 462; Missouri, K. & T. Ry. Co. v. Nesbit, 40

Texas Civ. App., 209; Lexington Ry. Co. v. Herring, 96 S. W., 558; Louisville & N. Ry. Co. v. Logsdon, 71 S. W., 905; South Covington & C. St. Ry. Co. v. Nelson, 89 S. W., 200; Louisville & N. Ry. Co. v. Hall, 74 S. W., 280.

The defendant had a right to group the facts constituting its defense on contributory negligence and present them, with their legal effect, in a charge from its standpoint, and request the giving hereof to the jury, and a refusal to submit the issue thus presented was error. Northern Texas Trac. Co. v. Moberly, 109 S. W., 483; Klatt v. Houston Elec. St. Ry. Co., 57 S. W., 1112; Texas Trunk Ry. Co. v. Ayres, 83 Texas, 268; Dallas Con. Elec. St. Ry. Co. v. Conn, 100 S. W., 1019; Texas & P. Ry. Co. v. Johnson, 55 Texas Civ. App., 495; Gulf, C. & S. F. Ry. Co. v. Sheider, 88 Texas, 152; El Paso Elec. Ry. Co. v. Boer, 108 S. W., 199; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; St. Louis S. W. Ry. Co. v. Casseday, 92 Texas, 525; St Louis S. W. Ry. Co. v. Rea, 87 S. W., 324; Yellow Pine Oil Co. v. Noble, 101 Texas, 125.

*Brooke & Woolworth* and *Johnson & Edwards,* for appellees.—The evidence authorized and even required the finding of the jury that Mrs. Hall was injured in the manner and circumstances alleged. Lee v. International & G. N. R. Co., 89 Texas, 583; San Antonio & A. P. Ry. Co. v. Choate, 90 Texas, 88; Texas & Ft. Smith Ry. Co. v. Frugia, 43 Texas Civ App., 48; Texas Standard Oil Co. v. Hanlon, 79 Texas, 678; Bowman v. Texas Brewing Co., 17 Texas Civ. App., 446; Houston & T. C. Ry. Co. v. Davis, 45 Texas Civ. App., 212; Chicago, R. I. & P. Ry. Co. v. Barrett, 35 Texas Civ. App., 366.

It was the exclusive province of the jury, who heard and saw the witnesses, to weigh the testimony. Houston & G. N. Ry. Co. v. Randall, 50 Texas, 261; Chicago, R. I. & T. Ry. Co. v. Jones, 39 Texas Civ. App., 480; International & G. N. R. Co. v. Elkins, 54 S. W., 931; St. Louis & S. F. Ry. Co. v. Andrews, 44 Texas Civ. App., 426; Houston & T. C. R. Co. v. Lowe, 11 S. W., 1065; Galveston, H. & S. A. Ry. Co. v. Sanders, 65 S. W, 889; Atchison, T & S. F. Ry. Co. v. Click, 32 S. W., 226; City of Louisville v. Bailey, 74 S. W., 688; Louisville St. Ry. Co. v. Brownfield, 96 S. W., 912.

The charge on contributory negligence was properly qualified by an instruction that, for a recovery to be denied on the ground that Lillie Hall was injured by negligently leaving the moving train, it must be found that she would not have been injured if she had not done so. El 'Paso Elec. Ry. Co. v. Kitt, 99 S. W., 587; St. Louis S. W. Ry. Co. v. Cleland, 50 Texas Civ. App., 499; International & G. N. Ry. Co. v. Ormond, 64 Texas, 489; 1 Thompson on Neg., secs. 46, 169, 216, 219; Central Texas Ry. Co. v. Hoard, 49 S. W., 143; International & G. N. R. Co. v. Culpepper, 19 Texas Civ. App., 182; 29 Cyc., 532; South C. & C. St. Ry. Co. v. Nelson, 89 S. W., 200.

The evidence did not raise the issue whether Mrs. Hall was negligent in departing from the train while it was in motion, and the charge, in submitting that issue, was too favorable to appellant. St. Louis S. W. Ry. Co. v. Gammage, 96 S. W., 646; Missouri, K. & T. Ry. Co. v. Corse, 46 Texas Civ. App., 60; Chicago, R. I. & T. Ry. Co.

v. Armes, 32 Texas Civ. App., 32; Wegeschiede v. St. Louis Transit Co., 94 S. W., 774; Stetzler v. Metropolitan St. Ry., 109 S. W., 666.

The negligence of the husband, if any, in failing to interpose his care for the wife's protection, can not be imputed to the wife so as to defeat this action to recover damages inflicted on her by defendant's negligence. Galveston, H. & S. A. Ry. Co. v. Kutac, 76 Texas, 473; Galveston, H. & S. A. Ry. Co. v. Kutac, 72 Texas, 643; Markham v. Houston Direct Nav. Co., 73 Texas, 247; Central Texas Ry. Co. v. Gibson, 83 S. W., 862; Gulf, C. & S. F. Ry. Co. v. Slater, 22 Texas Civ. App., 583; Texas & P. Ry. Co. v. Curlin, 13 Texas Civ. App., 505; Garteisor v. Galveston, H. & S. A. Ry. Co., 2 Texas Civ. App., 230; Scheffield v. Central Union Tel. Co., 36 Fed., 264.

HODGES, A̲ssociate J̲ustice.—The appellees, W. R. Hall and wife, filed this suit in the District Court against the appellant, asking for damages in the sum of $10,000 for personal injuries to Mrs. Hall, alleged to have resulted from the negligence of the appellant railway company. The petition alleged, substantially, that on the 6th day of August, 1908, appellees were passengers on the appellant's train going from Timpson to a station called Zuber, and sometimes Gary; that when the train arrived at the latter station and stopped for the passengers to alight, the operatives of the train did not render the appellees any assistance in alighting, did not furnish any step or stool, and did not stop a reasonable time for Mrs. Hall to leave the train, and that before she could alight the train was caused to move violently forward and thereby caused Mrs. Hall to lose her balance and to fall, or suddenly and violently descend from the platform and steps to the ground; that in so doing she was struck by the steps, or some part of the coach, or came in contact with it, and received the injuries complained of. The appellant answered by general demurrer, special exceptions complaining of the misjoinder of Mrs. Hall as a party plaintiff, a general and special denial, and contributory negligence. The case was tried before a jury, resulting in a verdict and judgment in favor of the appellees for $5,000.

Assignments one, two and three challenge the sufficiency of the evidence to support the verdict. The facts show that at the time mentioned in the petition the appellees, with their four children, the oldest about seven years, and the youngest nine months of age, were passengers on appellant's train as alleged. When the train stopped at Zuber appellees, with their children, proceeded to the front platform of the car in which they were riding, for the purpose of getting off. The husband carried the baby; the two oldest children followed their father to the front platform and passed across to the rear platform of the next car; Mrs. Hall guided a small child ahead of her by the arm. When Hall reached the platform he at once descended to the ground with the baby in his arms, and about the same time one of the children who had passed to the platform of the other car reached the ground, leaving the other child on that platform. Mrs. Hall, following her husband, leading the child ahead of her, was in the act of descending the steps, and had one foot on the platform and the other on the top step, and was stooping over so as to

hold the child, who was then on the steps. According to her testimony, at this juncture the train was suddenly and violently started forward, which caused her to turn loose the child and to fall or "flounder down" the steps to the ground. She testifies that she alighted on her feet, but, being still unbalanced, she swayed and fell backward against the steps or some part of the car, which, moving with some speed, struck her violently in the back, knocked her upward and forward, and injured her severely. The testimony warrants the conclusion that the train was stopped only a few seconds at Zuber. When it started off one of the children had not alighted, and was carried about seventy-five yards before the train was stopped and the child taken off. Mrs. Hall, upon discovering that her child was still upon the train, became excited and followed it down the track, crying out that her child was being carried off.

The appellant argues with much earnestness that according to the testimony, Mrs. Hall was not injured by any violent motion of the train in causing it to come in contact with her body. She says: "When the train started it jerked the little girl loose from me, and she went on to the ground, I reckon; I do not know what became of her; she did not get hurt, but at any rate she got loose from me and went on to the ground, and I also went on to the ground and struck the ground on my feet, and I became unbalanced and fell back and hit something behind me; I suppose it was the steps; and whatever it was hit me knocked me up, and Mr. Hall caught me—that is, helped me—and I got up. And whatever it was hit me in the small of the back, and I have no way of knowing what part hit me—whether the steps or the corner of the car. It was done so quick that I did not know, but it must have been the steps, but I know that it was some part of the car. I do not know how much of the car or steps it was that hit me; I did not have time to tell that; but I know from the bruise; there was a considerable bruise there up and down my backbone and my kidneys. There was a bruise as large as the palm of my hand up and down my back. Of course, I have to take other people's words for the black part of it; only I have seen the bruises there when I went before the mirror and looked at them." There was testimony tending strongly to corroborate Mrs. Hall's statements as to the appearance of bruises and discolorations upon her back indicating that she had received some injuries upon that portion of her body. She also testified that prior to the time of this alleged injury she was a woman of robust health and had been able to do all of her household work, but that since then her health had been failing; that she had suffered much in various ways which could be attributed only to the injuries of which she complains. She also states that since that time she has not been able to perform her household duties, and that her health is still declining and has been continuously since the time of the accident. As to the extent of her injuries she said: "I still suffer pain and inconvenience as a result of that injury; my womb hurts me; it aches and pains me; it seems like it is pressing too heavy on some part, and I can not tell what part. From the way it pains and aches and hurts me it seems to be out of place; it has hurt me ever since. I never did have any

trouble in that region before the injury; I have always been healthy in that way, but there is not any rest for me since then. I mean by that, if I happen to drop off to sleep I have bad dreams, and that things are after me; I dream that the children are on the railroad and that the train is about to run over them; and I get excited in my sleep and am more tired when I get up than when I went to bed; and before the injury I slept as good as anybody could; I always slept good at night and took a nap in the daytime, and rested after I went to sleep; but what sleeping I do now does not rest me. My nervous system and strength since the injury have all run down; I am not in good health at all, and have not got enough strength for anything, hardly. Before the injury I was in good health and strength, and since then I have been in bad condition and nervous. There has nothing happened to me that would have caused all this change in my condition except that blow or injury that I received; my womb has been hurting me, and I suppose it was from that hit there on the ground; of course, it did not hurt me right at the time, but I have not had any other fall or jump or anything like that besides this injury that would have caused that." It is true that there was other testimony which tends to discredit the statements of Mrs. Hall, both as to the fact of injuries and their extent, but this conflict in the testimony presented a question for the jury, and must be regarded as having been settled by the verdict rendered.

The fourth assignment complains of the verdict as being excessive. While the amount recovered is a liberal allowance, yet if the jury believed the testimony of Mrs. Hall and her witnesses as to the extent of her injuries we can not say that it is so large as to require a reduction at our hands. In the very nature of suits like this we must permit the exercise of much latitude by the juries in fixing the amount of damages to be awarded; and it is only when this discretion has been abused that the courts should feel called upon to interfere.

There was no reversible error in refusing to give special charges five and six.

Objection is made to the following portion of the main charge of the court: "And if you find from the evidence that plaintiff, Lilly Hall, departed from and left the train while it was in motion, or attempted to do so, and was injured by reason of so doing; and if you find that she would not have been injured if she had not left the train while it was moving, or attempted so to do, then, provided you find that an ordinarily prudent person in the same circumstances of the situation would not have left the train while it was moving, nor attempted to do so, the plaintiffs can not recover; but a recovery by the plaintiffs would not be prevented or defeated merely on this account, if you find from the evidence that an ordinarily prudent person in the same circumstances of the situation would have departed from the train, or attempted to do so, while the train was moving, in the same manner that said Lilly Hall did, if you find she did so." While the wording of this charge may not render the meaning of the court entirely clear, yet there was no affirmative error embraced within its terms. In giving it the court was not presenting to the jury a phase of the evidence which furnished a basis for the plaintiffs'

recovery, but one under which there could be no recovery; nor was the jury told in that connection that if they failed to believe the facts grouped in that portion of the charge they might find for the plaintiffs. We do not think there was any error in the charge complained of. Neither do we think the charge of the court upon the measure of damages is subject to the objection that it permits a double recovery. At the instance of appellant the court gave the following special charge: "In order for the plaintiffs to be entitled to a recovery in this case it is necessary that they prove by a preponderance of the testimony the following: 1st. That Mrs. Lillie Hall received injuries on the occasion in question. 2d. That the said injuries so received were the direct and proximate result of negligence on the part of the defendant and its agents in not stopping the train a reasonable time for the said Mrs. Lillie Hall to alight therefrom, and that they started the train before she did alight therefrom. 3d. That the said Mrs. Lillie Hall and her husband were not guilty of any negligence that .caused or contributed to cause the injuries to said Mrs. Lillie Hall. If you fail to find in favor of the plaintiffs on any one of these matters you will find for the defendant."

Assignment No. 9 complains of the refusal of the court to give the following special charge: "If you find from the testimony that Mrs. Lilly Hall did receive personal injuries while alighting from the train, and if you find that the plaintiff, W. R. Hall, did not use ordinary care to take her and the remainder of the family from the train within a reasonable time after the train stopped for Zuber station, and that he thus caused or contributed to cause her injuries, if any, or that he failed to use ordinary care to prevent her being injured in alighting from the train, and this caused or contributed to cause her injury, if any, you will find for the defendant, regardless of whether or not the defendant or its agents were guilty of negligence." This charge is intended to present to the jury an issue based upon the failure of Hall to exercise proper care in taking his family from the train and in failing to assist his wife from the train after he had gotten off. The first issue of contributory negligence on the part of Hall we think was fully presented in other portions of the court's charge. As to his contributory negligence in failing to render his wife proper assistance when alighting under the circumstances, we do not think the testimony is sufficient to raise that issue. The undisputed facts show that Hall preceded his wife a short distance; that he was carrying in his arms their nine-months-old baby; that the train began to move after he had descended and before Mrs. Hall got on the lower steps. Encumbered as he was, we do not think the facts would have justified the jury in reaching the conclusion that there could be no recovery on account of his failure to render his wife other assistance in alighting from the train.

There was no error in refusing the special charges complained of in the remaining assignments of error. The judgment of the District Court is therefore affirmed.

*Affirmed.*

Writ of error refused.