02-10-115-CV














 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00115-CV

 

 


 
 
 Gardner Aldrich, LLP
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Michael Robert Tedder
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE
325th District Court OF Tarrant
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Gardner Aldrich, LLP (the law firm) appeals the trial court’s judgment on the
law firm’s suit on sworn account.  The
law firm intervened in the divorce and suit affecting the parent-child
relationship (SAPCR) of its former client, Stacy Lee Tedder, and her estranged
husband, Appellee Michael Robert Tedder. 
In the divorce decree, the trial court awarded the law firm a judgment
on its suit on sworn account solely against Stacy for $151,747.28 in damages,
together with postjudgment interest and conditional posttrial fee awards (all
amounts collectively “client fee award”). 
In four issues, the law firm contends (1) that the trial court erred and
abused its discretion by not expanding the client fee award to hold not only
Stacy liable but also hold her husband Michael jointly and severally liable;
(2) that the evidence is legally and factually insufficient to support the
trial court’s failure to grant the law firm a judgment that Michael is jointly
and severally liable for the client fee award; (3) that the trial court erred
and abused its discretion by granting a final judgment inconsistent with the
judgment rendered in open court on August 27, 2009; and (4) that the evidence
is legally and factually insufficient to support the trial court’s failure to grant
the law firm a final judgment consistent with the judgment rendered in open
court on August 27, 2009.  Within the law
firm’s discussion of the issues on appeal is the complaint that the client fee
award should be expanded to include an award of reasonable attorney’s fees
incurred in pursuing the intervention at trial. 
Because we hold that the trial court erred by (1) not including in the
client fee award reasonable and necessary attorney’s fees that the law firm
expended in bringing its intervention below and (2) extinguishing the law firm’s
right to collect the client fee award from Michael jointly and severally, we reverse
the trial court’s judgment as to the client fee award, render judgment that Michael
and Stacy are jointly and severally liable for the client fee award, and remand
this case for a new trial solely on the issue of the proper amount of
reasonable and necessary trial attorney’s fees that should be added to the
client fee award.

I. 
Statement of Facts

The
law firm represented Stacy from October 15, 2007, a week before Michael filed
the original petition for divorce, through a June 2009 jury trial on
conservatorship.  After a jury decided
that Stacy and Michael should be joint managing conservators (JMCs) and that
Stacy should have the exclusive right to determine the children’s primary
residence within the Arlington Independent School District, the law firm
withdrew from representation of Stacy and filed a petition for intervention,
serving the petition on Michael, Stacy, and the children through their
respective lawyers with the lawyers’ consent. 
The petition includes claims of breach of contract and quantum meruit
and a suit on sworn account.  The
petition asserts that Stacy had executed and then breached a written employment
contract, that the law firm had provided services to Stacy for which it had not
been paid, and that in providing legal services to Stacy, the law firm had
incurred expenses on an open account.  In
its prayer, the law firm asked for judgment against Stacy and Michael jointly
and severally.  No one filed a sworn
denial.

At
the hearing on the law firm’s petition for intervention, the law firm argued
that neither Michael nor Stacy had filed a sworn denial and that therefore the law
firm was entitled to judgment as a matter of law.  The trial court stated that it “w[ould] enter
a judgment on the pleadings based on the sworn account in the amount of
$151,747.28.”  Robert Aldrich (“Aldrich”)
then testified about his experience and attorney’s fees in bringing the
intervention suit and appellate fees regarding the intervention.

On
cross-examination by Stacy’s new attorney, Aldrich testified that he believed
that $50,000 of the $87,500 or amount close to that which had already been paid
to the law firm for representing Stacy in the divorce had been from the
community funds under Michael’s control. 
Michael’s counsel successfully objected to a question from Stacy’s attorney
inquiring why the fees in the divorce case had reached such a high amount.  Part of the answer is revealed in a letter
ruling issued a day after Stacy’s new counsel appeared in the case.  In the letter ruling, the trial court
required that a parenting coordinator be appointed “to facilitate the parties’
co-parenting of the children and to lessen the high conflict between the parties regarding issues affecting the
parties and the children.”  [Emphasis
added.]  The trial court left in place
orders that Michael pay Stacy $1,200 per month in child support.  Later that month, the trial court signed
modified temporary orders that required Michael to pay spousal support of
$1,000 (formerly $3,000 per month) during the pendency of divorce.

On September 22, 2009, the trial court sent a letter
ruling to the parties awarding Aldrich a judgment of $151,747.28 against Stacy.
 But also in that letter ruling, the
trial court awarded Stacy a judgment against Michael in the sum of $190,000 for
attorney’s fees, as well as additional conditional appellate attorney’s fees
should he appeal the divorce decree.  The
trial court stated in the letter ruling that Stacy’s attorney “shall prepare
the Decree of Divorce, the Wage Withholding Order, and QDRO’s to reflect this
ruling and shall submit all orders to the Court no later than October 23,
2009.”

But before such a decree could be signed, Michael and
Stacy entered into an agreement to the exclusion of the law firm that deleted
the award of the attorney’s fee judgment of $190,000 plus conditional appellate
fees to Stacy from Michael, and the trial court signed a divorce decree in
accordance with the couple’s agreement, awarding judgment in favor of the law
firm against Stacy but not Michael in the amount of $151,747.28, plus
postjudgment interest and conditional posttrial legal fees.  From our review of the letter ruling and the
signed decree, the decree also awards more time with the children to Michael,
reduces his periodic child support and medical support obligations, and reduces
Stacy’s assets by removing not only the $190,000 attorney fee judgment but also
a lien of $249,430 on Michael’s separate property.  The signed decree also provides that Michael
will pay a debt of $50,000, whereas the letter ruling ordered Stacy to pay it,
and states that the parents will “split 50/50 reasonable college expense and
continued healthcare for the children, provided that the children qualify for
that coverage,” topics not covered by the letter ruling.

The
signed decree specifically provides,

Debts to Wife

IT IS ORDERED AND DECREED that the
wife, Stacy . . . , shall pay, as a part of the division of the estate of the
parties, and shall indemnify and hold the husband and his property harmless
from any failure to so discharge, these items:

. . . . 

W-5.  The
judgment awarded to [the law firm] for attorney’s fees in the amount of
$151,747.28.

. . . . 

Attorney’s Fees

. . . . 

[The law firm] is awarded a judgment
against STACY . . . in the amount of $151,747.28 for
attorney’s fees, with post-judgment interest at the rate of five percent (5%)
per annum.  The sum of $5,000.00 is
awarded in the event a motion for new trial is filed but denied, and the
further sum of $20,000.00 in the event of an appeal to the Court of Appeals is
made but is unsuccessful.  The sum of
$10,000.00 is awarded if a petition for review is filed but not granted by the
Supreme Court of Texas, the sum of $10,000.00[] is awarded if the petition for
review is granted but the appeal to the Supreme Court of Texas is
unsuccessful.  The further sum of
$5,000.00 is awarded in the event a motion for rehearing is filed but not
granted by the Supreme Court of Texas. 
In the event a petition for writ of certiorari is filed but not granted
by the United States Supreme Court, the sum of $15,000.00 is awarded, and the
sum of $15,000.00 is awarded in the event a petition for writ of certiorari is
granted but the appeal to the United States Supreme Court is unsuccessful.

In
one of the law firm’s several pre- and postjudgment challenges to the decree,
Aldrich told the trial court,

Now . . . in your
ruling, I—I assumed that what you thought was, Okay, Stac[y] Tedder is going to
have to pay this.  I’m giving her a
judgment for all these attorney’s fees, and I’m giving her a lien for the . . .
improvements to the real property that was—that was his separate property.  So I—Mr. Aldrich and anybody else with
attorney’s fees can get paid through that lien if Stac[y] gets paid.  You know, that is what I assumed your
thinking was.  But you can’t do that,
because you granted me a judgment against both of them, and now look where we
are.  

. . . [T]he effect of what you’ve done
cheats me out of my ability to collect my judgment, and here’s how:  You can’t control—you . . . nor
any other court can control what parties do to settle matters amongst
themselves.  Now what they’ve done is,
because they want to settle this matter, Ms. Tedder no longer is going—is no
longer going to take a judgment against Mr. Tedder, and in return for that, he’s
going to let her do something else with the—the—the children.  Therefore, because . . . if
you don’t enter my judgment, then—then all of a sudden I’ve just got this one
judgment—I mean, this judgment against this one person, and she has no avenue
to collect anything from him anymore.

A
week after the trial court signed the order denying the law firm’s motion to
modify, correct, or reform the judgment, Stacy filed for chapter 7 bankruptcy.  She was discharged from bankruptcy on June
30, 2010.  Afterward, this court
reinstated the law firm’s appeal.

II. 
Award of Attorney’s Fees for Prosecuting the Law Firm’s Suit

Included
in its discussion of its issues in its briefs is the law firm’s contention that
the trial court should have awarded reasonable attorney’s fees to the law firm
for prosecuting its intervention.  At
trial, the law firm presented uncontroverted testimony concerning the attorney’s
fees it incurred in bringing the intervention. 
Stacy objected, arguing that an attorney (as opposed to a nonattorney
party) cannot recover fees for prosecuting a case.  This court has already rejected that premise.[2]  Michael raised no objection specifically
targeting the attorney’s fees that the law firm incurred in prosecuting the
suit, nor does he raise such argument on appeal.

Section
38.001 of the civil practice and remedies code provides that “[a] person may
recover reasonable attorney’s fees from an individual . . . ,
in addition to the amount of a valid claim and costs, if the claim is for . . .
(1) rendered services; (2) performed labor; . . . (7) a
sworn account; or (8) an oral or written contract.”[3]  As this court has previously explained,

An award of reasonable attorney’s fees
is mandatory under section 38.001 if there is proof of the reasonableness of
the fees.  The amount of the award lies
within the discretion of the court, but it does not have the discretion to deny
attorney’s fees if they are proper.  When
a claim for attorney’s fees is based on chapter 38, it is presumed that the
usual and customary attorney’s fees are reasonable, although that presumption
may be rebutted.

Factors the trier of fact should
consider in determining the amount of reasonable attorney’s fees include the
following:  (1) the time and labor
required, the novelty and difficulty of the questions involved, and the skill
required to perform the legal service properly; (2) the likelihood that the
acceptance of the particular employment will preclude other employment by the
lawyer; (3) the fee customarily charged in the locality for similar legal
services; (4) the amount involved and the results obtained; (5) the time
limitations imposed by the client or by the circumstances; (6) the nature and
length of the professional relationship with the client; (7) the experience,
reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.[4]

The
law firm’s fee agreement with Stacy and billing records are attached to its
petition for intervention.  At the
hearing on the intervention, Aldrich testified about his experience level, his
hourly rate, the hourly rates of associates and paralegals at the law firm, and
the hours incurred:

I’m an attorney licensed to practice law in the State of
Texas, and have been so licensed since November the 6th, 1978.  I have tried and handled many divorce cases
[and] many civil matters . . . .  I’m board certified in civil trial law and
have been for some years. . . .

In this matter . . . I was the
attorney for Mrs. Tedder up until sometime at the first part of . . . July, . .
. after that first part of July I filed this petition [in] intervention, that— . . . I
have incurred attorney’s fees in bringing it, and I would expect to incur
attorney’s fees in the event of an appeal of this matter.  We have kept—kept a record of the attorney’s
fees, that as of yesterday afternoon, when I got back from the motion to recuse
hearing, there were $7,187.50 worth of attorney’s fees and paralegal time
involved in this lawsuit.

. . . . 

. . . It is my
testimony that those fees were reasonable and necessary in prosecuting this
action to collect this debt and to bring this claim and get this judgment.

I expect . . . that I
have spent three hours since yesterday afternoon and including my time in here . . .
on this matter, and for a total of $8,537.50[], which I believe to be []
reasonable . . . attorney’s fees in Tarrant County, Texas, for
prosecuting this claim through today.

He
testified that he had spent ten or eleven hours on the case at an hourly rate
of $450, that his legal assistant had billed for her time on the case at $125
per hour, that the law firm’s associate lawyers had spent the most time on the
case and billed at $225 per hour.  Given
the uncontroverted evidence, we hold that the trial court’s implicit finding
that the law firm was entitled to zero attorney’s fees for pursuing its
intervention is against the great weight and preponderance of the evidence and,
likewise, regarding the trial court’s implicit legal conclusion that the law
firm was entitled to zero attorney’s fees for pursuing its intervention, that the
contrary is established as a matter of law.[5]  We therefore hold that the trial court erred
by not including in the client fee award an award of reasonable and necessary
attorney’s fees for the prosecution of the law firm’s intervention. We sustain
this subissue.

III. 
Joint and Several Liability of Michael for the Client Fee Award

Contrary
to the law firm’s allegations on appeal, the absence of a sworn denial from
Michael does not automatically entitle the law firm to a judgment on sworn
account against him.  As the Supreme
Court of Texas has explained,

There being a fact question as to whether the defendant
was a party to the transaction evident from the face of the plaintiff’s own
invoices, the sworn account is not considered as prima facie proof of the debt.
 Therefore, a sworn denial is not
required in order for the respondent to controvert or disprove the account.[6]

The evidence supporting the law firm’s pleadings
demonstrates that it was Stacy who signed the contract, Stacy who was billed,
and Stacy who failed to pay the debt. 
Even if the evidence that Michael had previously paid a large portion of
attorney’s fees to the law firm on the account is evidence that Michael was not
a stranger to the transaction, it presented at most a fact issue, not proof as
a matter of law.  Accordingly, we cannot
say that the trial court erred or abused its discretion by excluding Michael
from the judgment on the suit on sworn account on the ground that he failed to
file a verified denial.

The attorney’s fees, however, were a community debt.  Debts contracted during the marriage are
presumed to be community unless it is shown that the creditor agreed to look
solely to the separate estate of the contracting spouse for payment of the
debt.[7]  The party seeking to overcome the presumption
must do so by clear and convincing evidence.[8]  Michael
offered no proof in the appellate record before us that the attorney’s fees
were not a debt of the community. 
Further, given the trial court’s placement of the debt to the law firm
in the community debts section, the trial court implicitly found that the
attorney’s fees were a community debt.

A finding that attorney’s fees are a debt of the
community establishes joint and several liability of both spouses.[9]  In Blake
v. Amoco Federal Credit Union, the Fourteenth Court of Appeals of Texas
held,

It is well-settled law in Texas that
divorce courts cannot disturb the rights of a creditor to collect from either
of the divorcing parties on a joint obligation.  Johnnie admitted that the debt at issue is a
community debt.  Texas courts have
consistently held that a division of the community estate may not prejudice the
rights of a creditor to satisfy a community debt.

Just because Amoco
was named a party, answered, and appeared at the hearing on the clarification
and enforcement motion does not necessarily mean that the court could modify
its rights under the facts presented here.  In Broadway Drug, the creditor, having
intervened in the divorce suit, was obviously a party to the suit.  This court recognized that the divorce court
had discretion in dividing property between the spouses, and to provide that
one spouse should pay the debt of the other.  We held, however, that the divorce court could
not prejudice the creditor’s right to take a judgment against both spouses when
dividing responsibility for payment of debts.[10]

Additionally,
section 2.501 of the family code provides,

(a) Each spouse has the duty to
support the other spouse.

(b) A spouse who fails to discharge
the duty of support is liable to any person who provides necessaries to the
spouse to whom support is owed.[11]

A
spouse is personally liable for the other spouse’s acts if the other spouse
incurs a debt for necessaries.[12]  Further, all community property is subject to
a liability for which both spouses are personally liable.[13]  A spouse’s attorney’s fees may be regarded as
necessaries to protect his legal rights as long as he acts in good faith and on
probable cause.[14]  The good faith and probable cause
requirements are met by a favorable verdict and orders of the trial court.[15]

Here,
Michael sought sole managing conservatorship, alternatively joint managing
conservatorship with the right to determine the children’s primary residence,
and alternatively a geographic restriction. 
He also sought child support.  The
jury named the parents JMCs and gave Stacy the right to determine the
children’s primary residence within the confines of Arlington Independent
School District; the trial court awarded Stacy, not Michael, child
support.  Accordingly, we hold that the
good faith and probable cause requirements are met.[16]  Consequently, we hold that Stacy’s attorney’s
fees due to the law firm were necessaries. 
We also therefore hold that Michael is personally liable for their
payment.[17]  Finally, because Michael and Stacy were each
personally liable for the client fee award, we hold that the trial court erred
by extinguishing the law firm’s right to collect the client fee award from
Michael jointly and severally.  We
sustain the law firm’s first two issues in part.  Because of our disposition of these portions
of the first two issues and the unnumbered subissue, we do not reach the law
firm’s remaining issues and subissues.[18]

IV. 
Conclusion

Having
held that the trial court erred (1) by excluding from the client fee award the reasonable
and necessary attorney’s fees that the law firm expended in bringing its
intervention below and (2) by insulating Michael from any liability for paying
the client fee award, we reverse the trial court’s judgment on Gardner Aldrich,
LLP’s suit on sworn account in part and affirm it in part.  We affirm the judgment as to the amounts
awarded as damages, postjudgment interest, and conditional posttrial attorney’s
fees.  We reverse the judgment to the
extent that it awards Gardner Aldrich, LLP zero attorney’s fees for prosecuting
its claim below and to the extent that it excludes Michael from all
liability.  We render judgment that (1)
Michael and Stacy are jointly and severally liable to Gardner Aldrich, LLP for
the damages, postjudgment interest, and conditional posttrial attorney’s fees
and (2) Michael and Stacy are also jointly and severally liable to Gardner
Aldrich, LLP for reasonable and necessary attorney’s fees incurred by Gardner
Aldrich, LLP in prosecuting its claim below.  We remand this case for a new trial solely for
the determination of the proper amount of reasonable and necessary attorney’s
fees incurred by Gardner Aldrich, LLP in pursuing its intervention.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MEIER,
and GABRIEL, JJ.

 

DELIVERED:  August 11, 2011











[1]See
Tex. R. App. P. 47.4.





[2]See AMX Enters., L.L.P. v. Master Realty
Corp., 283 S.W.3d 506, 517 (Tex. App.—Fort Worth 2009, no pet.) (op. on
reh’g) (citing Tesoro Petroleum Corp. v.
Coastal Ref. & Mktg., Inc., 754 S.W.2d 764, 766 (Tex. App.—Houston [1st
Dist.] 1988, writ denied), and Beckstrom
v. Gilmore, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied)).





[3]Tex.
Civ. Prac. & Rem. Code Ann. §
38.001 (West 2008).





[4]AMX Enters., L.L.P., 283 S.W.3d at
516–17 (citations omitted).





[5]See id. at 520.





[6]Sundance Oil Co.
v. Aztec Pipe & Supply Co., 576 S.W.2d 780, 781 (Tex. 1978).





[7]Hawkins v. Ehler, 100 S.W.3d 534, 541
(Tex. App.—Fort Worth 2003, no pet.); Morris v. Morris, 894 S.W.2d 859, 863 (Tex. App.—Fort
Worth 1995, no writ).





[8]Sprick v. Sprick, 25 S.W.3d 7, 13 (Tex.
App.—El Paso 1999, pet. denied).





[9]Wileman v. Wade, 665 S.W.2d 519, 520–21
(Tex. App.—Dallas 1983, no writ).





[10]900
S.W.2d 108, 111–12 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citations
omitted).





[11]Tex.
Fam. Code Ann. § 2.501 (West 2006).





[12]Id. § 3.201.





[13]See id. § 3.202 (West Supp. 2010).





[14]Navarro
v. Brannon, 616 S.W.2d 262, 263 (Tex. Civ. App.—Houston [1st Dist.] 1981,
writ ref’d n.r.e.).





[15]Roberts v. Roberts, 193 S.W.2d 707, 709
(Tex. Civ. App.—Dallas 1945, no writ).





[16]See id.





[17]See Tex. Fam. Code Ann. §§ 2.501, 3.201.





[18]See Tex. R. App. P. 47.1.